# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 24, 2012

Lyle W. Cayce
Clerk

No.  11-20068

CITY OF HOUSTON,

Plaintiff - Appellee

v.

AMERICAN TRAFFIC SOLUTIONS, INC.,

Defendant - Appellee

v.

RANDALL KUBOSH; FRANCIS KUBOSH,

Amici Curiae - Appellants

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, and HIGGINBOTHAM and SMITH, Circuit Judges.
EDITH H. JONES, Chief Judge:

This is an interlocutory appeal from the denial of a motion to intervene as of right, FED. R. CIV. P. 24(a )(2), brought by citizens of Houston, Texas in regard to litigation between the City and the contractor  hired to run a red light camera system that generated millions of dollars annually to the City and the

No. 11-20068

contractor.  Because the district court erred in denying intervention, we reverse that order, and the associated denial of a new trial, and remand for further proceedings.

After the City passed an ordinance approving the use of red light cameras, it entered a contract with American Traffic Solutions ("ATS") in 2005 to run the system.  Before the underlying litigation began in late 2010, the City had collected millions of dollars from electronically generated traffic tickets, and ATS had received $9 million.  Francis and Randall Kubosh launched a political campaign, spending over $200,000 of their personal funds, to force the City to cease using this system.  They organized a petition drive, and of course signed petitions, for a city charter amendment vote on whether the system's use could be continued.  The requisite signatures were obtained and certified, and the City placed the charter amendment on a ballot in November, 2010.  The City vigorously opposed the Kuboshes' efforts, but their grass roots campaign succeeded.  The charter amendment vote repudiated the system.

On the day that the City Council enacted an ordinance reflecting the election results, the City terminated ATS's contract and sued for a declaratory judgment in federal court, seeking a declaration of rights between ATS and the City over the contract's status. ATS promptly demanded that the City cease its termination effort.  The company counterclaimed, alleging that the charter amendment election and subsequent ordinances were invalid, ultra vires, and unconstitutional.  By mutual agreement of the City and ATS, in what is in essence a preliminary injunction order (the November 2010 0rder), the red light cameras were not to be removed from city intersections during the litigation. The court placed the suit on a fast track.  When the Kuboshes read about the

No. 11-20068

suit on a local newspaper reporter's blog, they immediately sought to intervene of right, a motion the court soon denied, although it allowed them to participate as amici. The court denied a motion for new trial concerning this ruling. The Kuboshes timely appealed these and all related orders of the court.

During the pendency of this appeal, the district court issued an interlocutory judgment in favor of ATS on cross motions for summary judgment in June 2011. The court held that the charter amendment election constituted an untimely referendum under state law, rendering its result invalid to cancel the prior authorization of the red light camera system. Almost immediately, the City turned on the cameras again and began generating traffic tickets with them. The public, however, expressed such a level of dissatisfaction with this maneuver that the City Council, in August, took various measures including the passage of a new ordinance formally repealing the red light cameras' authorization.[1]

The denial of intervention of right is a final order for appeal purposes. *Edwards v. City of Houston*, 78 F.3d 983, 992 (5th Cir. 1996 )(en banc). Because the motion to intervene is not argued to have been untimely, this court reviews the standards for intervention of right *de novo*. *Edwards*, 78 F.3d at 995. To succeed as an intervenor of right, a party must show, in addition to timeliness, that it has "an interest" relating to the property or transaction in the litigation; that the disposition of the action may impair or impede, as a practical matter,

---

[1] This court was not informed about the repeal ordinance until just prior to oral argument in January 2012. Moreover, the court has only just been alerted about the City's motion to modify the November 2010 order to allow removal of the cameras. And via the newspaper, this court is informed that the City will attempt to settle its litigation with ATS within a few days.

No. 11-20068

its ability to protect that interest; and that the intervenor's interest is inadequately represented by existing parties to the suit. *Edwards*, at 999. Failure to satisfy any of these standards precludes intervention of right. Id. Nevertheless, " 'the inquiry under subsection (a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application . . . [and] intervention of right must be measured by a practical rather than technical yardstick.' " *Id.* (quotation omitted).

The Kuboshes describe their "interest" as that of voters, petition organizers for a city charter amendment, and concerned citizens who signed the petitions and spent a small fortune in support of a successful campaign to change the City's charter. Their interest is or may be severely impaired, they contend, if the City is allowed to pursue this litigation to conclusion in such a way that results either in the repudiation of their charter amendment (as the court has already determined) or the repeal of the August 2011 repeal ordinance that, absent a valid charter amendment, could presage revival of the red light cameras at any time. Finally, the Kuboshes contend that the City failed to raise substantial arguments and evidence against ATS before the district court. The City allegedly relinquished its ability to present the strongest defense of the charter amendment because it opposed the Kuboshes' position from the outset, attempted to reinstate the cameras before the litigation had concluded, and stands to lose millions of dollars in potential revenue, or in lawsuit termination costs, from a successful defense of the charter amendment.

Briefing does not reveal any cases directly on point. A court must be circumspect about allowing intervention of right by public-spirited citizens in suits by or against a public entity for simple reasons of expediency and judicial

efficiency. *Compare League of Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421 (5th Cir. 2011) (finding voter's interest sufficient for intervention as of right). More important, the public entity must normally be presumed to represent the interest of its citizens and to mount a good faith defense of its laws. *See*, *e.g.*, *Edwards*, *supra* at 1005; *United States v. S. Bend Cmty. Sch. Corp.*, 692 F.2d 623, 628 (7th Cir. 1982). But there is no federal authority nor state law prohibiting intervention of right in this type of case. These intervenors are unique because they engineered the drive that led to a city charter amendment over the nearly unanimous, well funded, and longstanding opposition of the Mayor and City Council. They have demonstrated a particular interest in cementing their electoral victory and defending the charter amendment itself. If the amendment is overturned, their money and time will have been spent in vain. Finally, they have raised substantial doubts about the City's motives and conduct in its defense of the litigation with ATS. Without these intervenors' participation, the City might well be inclined to settle the litigation on terms that preserve the adverse ruling on the charter amendment and thus preserve its flexibility to reinstate red light cameras in the future. This is no matter of simply defending City policy of one sort or another: it involves millions of dollars of revenue to City coffers during a period of considerable economic uncertainty. The district court erred in declaring that the Kuboshes had to prove a "meaningful probability [of inadequate representation] derived from actual facts." Under the totality of circumstances here, including the haste of the litigation, the City's pecuniary motives, the extended opposition to the charter amendment, the agreed order to leave the cameras in place, and the attempt to reinstate them before the suit had concluded (although this act

No. 11-20068

occurred after the denial of the intervention motion), it is sufficient to conclude that the intervenors' interests "may be" inadequately represented. *See Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10, 92 S. Ct. 630, 636 n.10 (1972); *Edwards*, 78 F.3d at 1005.

For these reasons, the district court's orders denying intervention and a new trial are **REVERSED**, and the case is **REMANDED** for further proceedings in accord herewith.